UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SILVIO CARDO,

      Petitioner,

      v.

WARDEN MATTHEW MORDANT,
TODD LYONS, MARKWAYNE
MULLIN, ACTING U.S.
ATTORNEY TODD BLANCHE,

      Respondents,

Case No. 2:26-cv-1022-KCD-NPM

_____/

## ORDER

Petitioner Silvo Cardo is a Cuban citizen with a final order of removal. He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his continued detention violates the Immigration and Nationality Act and the Fifth Amendment. (Doc. 1 at 10.)[1] The Government opposes the petition. (Doc. 8.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Cardo was ordered removed from the United States in 2000 after a criminal conviction for murder. (Doc. 8-1 at 4-11.) He was not removed at that time and instead placed on an order of supervision. (*Id.* at 14.)

On October 31, 2025, ICE determined it was appropriate to detain Cardo once more and revoked his supervision to execute his longstanding removal order. (*Id.* at 16.) He was also served a notice that ICE intends to remove him to Mexico. (*Id.* at 23.) On January 5, 2026, ICE made good on that notice. But according to the unrebutted record, Cardo refused to cooperate and would not exit the "pod" at the border. (Doc. 8 at 2, Doc. 13 at 5.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

2

### III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

ICE took Cardo into custody on October 31, 2025, which is now beyond six months. But on January 5, 2026, he refused removal to Mexico, which tolls the detention period. *See Akinwale*, 287 F.3d at 1052 n.4 (stating that "removal period shall be extended ... if the alien ... acts to prevent [his] removal").

Under 8 U.S.C. § 1231(a)(1)(C), the removal clock stops ticking if an alien refuses to cooperate in obtaining travel documents. It also tolls if the alien "conspires or acts to prevent [his] removal." *Id.* Common sense (and the Eleventh Circuit) tells us that a person cannot actively thwart his own deportation and then use the resulting delay to demand his freedom. Whether by stubbornly withholding a signature on a required form or by affirmatively taking steps to sabotage the government's efforts, an alien who engineers his own prolonged detention cannot turn around and complain about it. The law does not reward that kind of gamesmanship. *See Quo Zing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal.").

That is precisely the game Cardo is playing here. He does not deny that he physically prevented extradition at the border. (Doc. 13 at 5.) He has likewise refused to sign the notice of removal. Cardo attempts to justify this resistance by shifting the blame to the Government. He argues that because

4

immigration officials have not provided him with concrete documentation showing that Mexico has formally agreed to accept him, he has no obligation to cooperate. (*Id.*) "Absent such documentation," he insists "Respondents cannot attribute the failure to effectuate removal to [him]." (*Id.*)

Cardo's argument ignores the statutory scheme for third-country removal. The INA explicitly authorizes the Department of Homeland Security to deport individuals to alternative countries. *See* 8 U.S.C. § 1231(b)(2)(E). If a noncitizen wishes to challenge a third-country designation—whether by asserting a fear of persecution or by raising other statutory claims—there are avenues available. *Id.* § 1231(b)(3). Yet there is no indication that Cardo ever pursued these proper channels, or that the Government denied him the opportunity to seek such relief. The Government does not carry a reciprocal burden to prove to the noncitizen's personal satisfaction that his reception is guaranteed before he is obligated to proceed with removal. By treating his compliance as a conditional benefit that the Government must earn by producing diplomatic paperwork, Cardo attempts to turn § 1231 on its head.

Instead of properly challenging his removal to Mexico, it seems Cardo chose to fight it with physical resistance at the border. But staging a sit-in and refusing to participate in processing is not a recognized form of administrative due process. It is a textbook act of actively preventing removal under 8 U.S.C. § 1231(a)(1)(C). *See, e.g.*, *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015).

5

Cardo cannot bypass the law's designated channels, physically halt his own removal, and then turn around and use that self-inflicted delay to demand his freedom here. Because it appears that Cardo's own non-cooperation is the moving force behind his ongoing confinement, his detention period is tolled, and his habeas petition must fail. See *Akinwale*, 287 F.3d at 1052 n.4.

Consequently, the habeas petition (Doc. 1) is **DENIED WITHOUT PREJUDICE** to Cardo refiling a new petition should his current detention be unimpeded and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on May 21, 2026.

Kyle C. Dudek
United States District Judge

6